UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
CINDY S. BROWN, as Personal  :
Representative to the Estate :
of Walter E. Brown,          :
                             :
            Plaintiff,       :
                             :
v.                           :    Civil No. 3:12cv01495(AWT)
                             :
CBS CORPORATION, et al.,     :
                             :
            Defendants.      :
                             :
-----------------------------x
```

**RULING ON LOCKHEED MARTIN CORPORATION'S
MOTION TO DISMISS PLAINTIFF'S
<u>SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION</u>**

This action was brought in Connecticut Superior Court by Walter Brown against fourteen defendants, including Lockheed Martin Corporation ("Lockheed"), for injuries related to exposure to asbestos. Lockheed removed the case to this court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a), based on the fact that Walter Brown's claims stemmed from his work with the United States Air Force, Lockheed was operating under the direction and control of the United States Government, and Lockheed was asserting federal defenses. Lockheed filed a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.

After Walter Brown died, an amended complaint was filed by Cindy S. Brown, the personal representative of the estate of Walter Brown.  Subsequently, the plaintiff filed a motion to amend the first amended complaint, which the court granted. After the parties completed jurisdictional discovery, Lockheed moved to dismiss the second amended complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2).  For the reasons set forth below, the motion to dismiss is being granted.

## I. FACTUAL ALLEGATIONS

The decedent was, and the plaintiff currently is, a resident and citizen of Alabama.  Lockheed is a Maryland corporation with its primary headquarters in Bethesda, Maryland, and "five business areas" headquartered in Gaithersburg, Maryland; Manassas, Virginia; Fort Worth, Texas; Dallas, Texas; and Denver, Colorado.  (Def.'s Mem. Supp. Mot. Dismiss (Doc. No. 199) ("Def.'s Mem."), at 4.)  However, despite being incorporated and having its principal places of business elsewhere, Lockheed is registered to do business in Connecticut and has a registered agent for service of process in Connecticut.

Additionally, Lockheed maintains several other contacts with Connecticut. For example, between 2008 and 2012, Lockheed derived roughly $160 million in revenue from Connecticut-based work.  During that same time period, Lockheed also maintained

employees at four different locations in Connecticut, i.e. New London, Groton, Windsor Locks, and Hartford, and leased four separate parcels of real property in Connecticut, located in New London, New Haven, and Fairfield. It is still leasing one parcel of real property in New London--a 9,000 square foot space where there is a Lockheed Martin sign on the building. Lockheed has operated out of this space since at least 1997. Finally, Lockheed pays Connecticut state corporate income tax on the revenue it earns in Connecticut, and it maintains workers' compensation insurance policies in Connecticut for its Connecticut-based workers, in accordance with Connecticut state law.

The extent of these contacts, however, is relatively small when compared to Lockheed's operations as a whole. For instance, between 2008 and 2012 its Connecticut-based employees made up less than 0.05% of its total work force, and the revenue they generated in any given year accounted for between just under 0.05% to just over 0.1% of Lockheed's total annual revenue. In addition, although Lockheed does currently lease one facility in Connecticut and has leased other properties in the past, it does not own any real property and it does not maintain any bank accounts in the state. Finally, the work Lockheed employees undertake in Connecticut is not directed toward or advertised to Connecticut residents; all Connecticut-

based work is performed pursuant to federal contracts for the benefit of the United States Government.

## II. LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant . . . ." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). Where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). When, as here, "the parties have conducted extensive discovery regarding the defendant's contacts with the forum state", the plaintiff's showing "'must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)) (alterations in original).

Furthermore, "'[w]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials . . . . [t]he allegations in the complaint

must be taken as true to the extent they are uncontroverted by the defendant's affidavits.'" Seetransport Wiking Trader Schiffanhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993) (quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (citations omitted), cert. denied, 498 U.S. 1068 (1991)). Thus, "'[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'" Id.

Finally, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits," and thus Connecticut law is applied to Lockheed's motion to dismiss. Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963).

**III. DISCUSSION**

In Connecticut, "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." Thomason v. Chem. Bank, 234 Conn. 281, 285-86 (1995). "[The] first inquiry must be whether our long-arm

-5-

statute authorizes the exercise of jurisdiction under the
particular facts of this case. Only if we find the statute to be
applicable do we reach the question whether it would offend due
process to assert jurisdiction." Lombard Bros., Inc. v. Gen.
Asset Mgmt. Co., 190 Conn. 245, 250 (1983).

## A. Connecticut's long-arm statute

Lockheed contends that the plaintiff cannot avail herself
of Connecticut's long-arm statute because neither she nor the
decedent was a resident of Connecticut when this action was
filed, and the "Connecticut long-arm statutes do not confer
jurisdiction over actions committed by a nonresident party
against another nonresident." Pomazi v. Health Indus. of Am.,
869 F. Supp. 102, 104 (D. Conn. 1994). The Connecticut long-arm
statute pertaining to foreign corporations is found at Conn.
Gen. Stat. § 33-929 and states, in pertinent part:

> (a) The registered agent of a foreign corporation
> authorized to transact business in this state is the
> corporation's agent for service of process, notice or
> demand required or permitted by law to be served on
> the foreign corporation. When the registered agent is
> other than the Secretary of the State and his
> successors in office, service may be effected by any
> proper officer or other person lawfully empowered to
> make service by leaving a true and attested copy of
> the process, notice or demand with such agent or, in
> the case of an agent who is a natural person, by
> leaving it at such agent's usual place of abode in
> this state. . . .
>
> (e) Every foreign corporation which transacts business
> in this state in violation of section 33-920
> [requiring foreign corporations to obtain a

certificate of authority from the Secretary of the
State] shall be subject to suit in this state upon any
cause of action arising out of such business.

(f) Every foreign corporation shall be subject to suit
in this state, by a resident of this state or by a
person having a usual place of business in this state,
whether or not such foreign corporation is transacting
or has transacted business in this state and whether
or not it is engaged exclusively in interstate or
foreign commerce, on any cause of action arising as
[listed in the statute] . . . .

Lockheed argues that the language in this statute means that
unless a foreign corporation is transacting business in
Connecticut without first obtaining permission from the
Secretary of the State, in violation of Conn. Gen. Stat. § 33-
920, then the plaintiff must be either a resident of, or a non-
resident having her usual place of business in, Connecticut in
order for Connecticut courts to exercise jurisdiction over the
foreign corporation.  Lockheed contends that the fact that only
§§ 33-929(e) and (f) state that a foreign corporation "will be
subject to suit in this state" suggests that those are the only
subsections of § 33-929 that confer personal jurisdiction over
foreign corporations.  Thus, Lockheed argues, because it has
complied with § 33-920 and the plaintiff has no connections to
Connecticut, she cannot bring her suit in this state.

The plaintiff argues, however, that by registering to do
business in Connecticut and designating the Secretary of the
State as its agent for process, Lockheed consented to be subject

to the personal jurisdiction of Connecticut courts.  In other words, the plaintiff contends that § 33-929(a) is also able to confer personal jurisdiction over Lockheed.

Based upon review of the case law discussing § 33-929(a), the court concludes that § 33-929(a) can confer personal jurisdiction on a registered foreign corporation for purposes of the long-arm statute, but the requirements of the due process clause must also be met.  An early decision discussing whether § 33-929(a) confers personal jurisdiction is <u>Wallenta v. Avis Rent a Car System, Inc.</u>, 10 Conn. App. 201 (1987).[1]  The court in <u>Wallenta</u> began its analysis with the general proposition that "[a] corporation which complies with the requisites of General Statutes § 33-[929](a)", i.e. registering to do business in Connecticut, "has, in fact, consented to the exercise of jurisdiction by the courts of this state" because "[s]uch a corporation has 'purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  <u>Id.</u> at 207.  The court then specifically considered the amenability of a foreign corporation to a suit for injuries arising out of activities unrelated to the corporation's Connecticut-based activities:

---

[1] The court in <u>Wallenta</u> was not considering Conn. Gen. Stat. § 33-411(a), an earlier version of § 33-929(a).  However, for the purposes of this discussion, the two versions are sufficiently similar so that they are interchangeable.  (<u>See, e.g.</u>, Def.'s Reply Mem. Supp. Mot. Dismiss (Doc. No. 210), at 2.)

> The courts of this state have the authority to
> determine whether personal jurisdiction may be
> asserted against a foreign corporation doing business
> here arising out of a cause of action for activities
> which occurred in another state and which were
> unconnected to the activities of the corporation here.
> . . . "By authorizing an agent or public official to
> accept service of process in actions brought against
> it, the corporation consents to the exercise by the
> state of judicial jurisdiction over it as to all
> causes of action to which the authority of the agent
> or official extends.  This consent is effective even
> though no other basis exists for the exercise of
> jurisdiction over the corporation."

Id. at 207-08 (quoting 1 Restatement (Second), Conflict of Laws

§ 44, comment (a)).  The court therefore concluded that "[t]he

[plaintiff's] allegation that the defendant [is] licensed to do

business in this state [is] sufficient to show that this state

had authorized the assertion of jurisdiction over the defendant,

and that the defendant had consented to that assertion of

jurisdiction."  Id. at 208.  The court recognized, however, that

"[t]he next question to be resolved is whether the assertion of

such personal jurisdiction offends due process."  Id.

Therefore, Wallenta stands for the proposition that § 33-929(a)

can authorize the exercise of personal jurisdiction over a

registered foreign corporation under the long-arm statute,

thereby satisfying the first prong of the personal jurisdiction

inquiry under Connecticut law, but the assertion of jurisdiction

cannot offend due process.

Wallenta has been read as holding that the consent discussed there is a consent only to service of process and not a consent to jurisdiction.  In Mednet MPC, Corp. v. United Healthcare, No. 3:95cv2723 (AHN), 1996 U.S. Dist. LEXIS 22338, at *12-13 (D. Conn. Aug. 15, 1996), the court concluded that "the Wallenta court incorrectly labeled section 33-[929](a) as a consent to jurisdiction statute, when it in fact meant (and concluded) that it is merely a consent to service of process statute which is always subject to federal due process oversight."  The court in Mednet reasoned that because sections 33-929(e) and 33-929(f) contain language stating that foreign corporations "shall be subject to suit" and section 33-929(a) does not, "based on Wallenta and a reasonable construction of Connecticut's long-arm statute, . . . section 33-[929](a) is a consent to service statute only and that the assertion of jurisdiction over a foreign corporation which complies with Connecticut's domestication statutes must ultimately comport with due process."  Id. at *13-14.  Also, in Anderson v. Bedford Assocs., Inc., No. 3:97cv1018 (GLG), 1997 WL 631117, at *3 (Sept. 19, 1997 D. Conn.), the court concluded that while the defendant was "amenable to service of process in the state of Connecticut because it had a registered agent for service of process and had been authorized to do business in this state", that did not necessarily mean that the court could exercise

personal jurisdiction over the defendant because "amenability to service of process is different from activities sufficient to subject the company to personal jurisdiction." However, the court cited to Wallenta for the proposition that "Conn.Gen.Stat.Ann. § 33-929(a)[] makes a defendant which has registered to do business in the state and which does business in the state amenable to jurisdiction in the state . . . . [but] due process requirements must still be satisfied", and concluded that

> even if we were to hold that Connecticut's long-arm statute . . . confers personal jurisdiction over [the defendant] based upon its registering to do business in Connecticut, we must still determine whether subjecting [the defendant] to personal jurisdiction before this court in this matter would violate due process requirements.

Id.[2]

The question of whether § 33-929(a) addresses consent to jurisdiction or consent to service of process was more recently

---

[2] On the other hand, the court in Talenti v. Morgan and Bro., 968 A.2d 933, 940-41, 941 n.14 (Conn. App. 2009) cited to Wallenta and held that since "the defendant has registered with the secretary of the state to conduct business in Connecticut . . . and has authorized the secretary of the state to accept service on its behalf" then "the defendant has voluntarily consented to the personal jurisdiction of it by the courts of this state. . . . As the defendant has consented to jurisdiction, the exercise of jurisdiction by the court does not violate due process. Therefore, the court does not need to undertake an analysis of any constitutional due process issues." However, Thomason v. Chem. Bank, 234 Conn. 281 (1995) makes it clear that in addition to the requirement that the long-arm statute authorizes the exercise of jurisdiction, the requirement that due process not be offended must also be satisfied. As observed by the court in Worldcare Ltd. Corp. v. World Ins. Co., 767 F. Supp. 2d 341, 355 (D. Conn. 2011), "[e]xpansive, non-explicit consent to being haled into court on any claim whatsoever in a state in which one lacks minimum contacts goes against the longstanding notion that personal jurisdiction is primarily concerned with fairness."

addressed in <u>Worldcare Ltd. Corp. v. World Ins. Co.</u>, 767 F.

Supp. 2d 341 (D. Conn. 2011), as follows:

> Recently, this District acknowledged that "[w]hile
> both <u>Mednet</u> and <u>Anderson</u> call into question the import
> of <u>Wallenta</u>'s 'consent to jurisdiction' nomenclature,
> neither decision altered the basic two-step approach
> actually employed in <u>Wallenta</u>." <u>USES Manufacturing,
> Inc. v. Rocky Mountain Institute</u>, 94 F. Supp. 2d 218,
> 222 (D. Conn. 2000). Judge Arterton in <u>USES</u> thus
> concluded that, irrespective of whether the courts
> characterized the consent language in <u>Wallenta</u> as
> "statutory consent to <u>service</u> as opposed to consent to
> <u>jurisdiction</u>, neither <u>Mednet</u> nor <u>Anderson</u> materially
> alter <u>Wallenta</u>'s central holding that [Conn. Gen.
> Stat.] Section 33-929(a) may provide a basis for
> jurisdiction over foreign corporations <u>subject to due
> process requirements</u>." 94 F. Supp. 2d at 223
> (emphasis added). This Court concurs. . . . In the
> interest of fairness, a foreign corporation . . . that
> properly complied with the Connecticut registration
> statute should be deemed to have consented to personal
> jurisdiction only where such jurisdiction is otherwise
> constitutionally permissible.

<u>Id.</u> at 356-57 (footnotes omitted) (emphasis in original). The

court finds the analysis in <u>USES</u> and <u>Worldcare</u> persuasive.

Thus, the court concludes that, because it is undisputed

that Lockheed has registered to do business in Connecticut, and

has been authorized to transact business here, the Connecticut

long-arm statute does apply to Lockheed and the first prong of

the two-step analysis is satisfied.

**B. <u>Due Process Considerations</u>**

After determining that the Connecticut long-arm statute

applies, Connecticut courts next turn to "the question [of]

whether it would offend due process to assert jurisdiction" over
the defendant.  Lombard Bros., 190 Conn. at 250.  "The due
process test for personal jurisdiction has two related
components: the 'minimum contacts' inquiry and the
'reasonableness inquiry."  Metropolitan Life Ins. Co. v.
Robertson-Ceco Corp., 84 F.3d 560, 567 (1996).  The "minimum
contacts" prong dictates that before a court can exercise
personal jurisdiction over a foreign corporation, the
corporation must "have certain minimum contacts with [the state
in which that court sits] such that the maintenance of the suit
does not offend 'traditional notions of fair play and
substantial justice.'"  International Shoe Co. v. Washington,
326 U.S. 310, 316 (1945).  "International Shoe's conception of
'fair play and substantial justice' presaged the development of
two categories of personal jurisdiction", commonly referred to
as "specific jurisdiction" and "general jurisdiction."  Daimler
AG v. Bauman, 134 S. Ct. 746, 754 (2014).  Specific jurisdiction
is applicable in cases "in which the in-state activities of the
corporate defendant 'ha[d] not only been continuous and
systematic, but also g[a]ve rise to the liabilities sued on.'"
Id. (quoting International Shoe, 326 U.S. at 317) (alterations
in original).  Furthermore, in some circumstances, even "the
commission of certain 'single or occasional acts' in a State may
be sufficient to render a corporation answerable in that State

with respect to those acts . . . .” Goodyear Dunlop Tires
Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (2011) (quoting
International Shoe, 326 U.S. at 318. In other words,
“[a]djudicatory authority is ‘specific’ when the suit ‘aris[es]
out of or relate[s] to the defendant’s contacts with the
forum.’” Id. (quoting Helicopeteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 414 (1984)) (alterations in
original).

The second category of personal jurisdiction, general
jurisdiction, is available in “situations where a foreign
corporation’s ‘continuous corporate operations within a state
[are] so substantial and of such a nature as to justify suit
against it on causes of action arising from dealings entirely
distinct from those activities.’” Daimler, 134 S. Ct. at 754
(quoting International Shoe, 326 U.S. at 318) (alterations in
original). Recently, the Supreme Court elaborated on what types
of contacts with the forum state are required, explaining that
“[a] court may assert general jurisdiction over foreign (sister-
state or foreign-country) corporations to hear any and all
claims against them when their affiliations with the State are
so ‘continuous and systematic’ as to render them essentially at
home in the forum State.” Goodyear, 131 S. Ct. at 2851; see
also Daimler, 134 S. Ct. at 754. Thus, the general jurisdiction
“inquiry under Goodyear is not whether a foreign corporation’s

in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" <u>Daimler</u>, 134 S. Ct. 761 (quoting <u>Goodyear</u>, 131 S. Ct. at 2851).

Traditionally, for corporations "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'" as "[t]hose affiliations have the virtue of being unique--that is, each ordinarily indicates only one place--as well as easily ascertainable." <u>Id.</u> at 760 (quoting Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L.Rev. 721, 735 (1988)) (alterations in original). Therefore, the place of incorporation and the principal place of business are generally viewed as the forums in which the corporation is "at home". Further, while neither <u>Goodyear</u> nor <u>Daimler</u> held that "a corporation may be subject to general jurisdiction <u>only</u> in a forum where it is incorporated or has its principal place of business", <u>Id.</u> at 760 (emphasis in original), the Court did state in <u>Daimler</u> that general personal jurisdiction existing in a "a forum other than its formal place of incorporation or principal place of business" would happen only "in an exceptional case . . . ." <u>Id.</u> at 761 n.19.

It is undisputed that the plaintiff's claims in this case do not arise out of or relate to Lockheed's activities within

Connecticut.  Therefore the court is only able to exercise

personal jurisdiction over Lockheed if its contacts with

Connecticut are "so substantial and of such a nature" that it

can fairly be said to be "at home" here.[3]  The plaintiff has not

made a prima facie showing that Lockheed has such contacts.

Although Lockheed's contacts with Connecticut may appear

substantial, when viewed in relation to its operations as a

whole, Lockheed's Connecticut activities account for a

relatively trivial amount of its overall business.  Daimler

instructs that an inquiry into

> [g]eneral jurisdiction . . . calls for an appraisal of
> a corporation's activities in their entirety,
> nationwide and worldwide.  A corporation that operates
> in many places can scarcely be deemed at home in all
> of them.  Otherwise, "at home" would be synonymous
> with "doing business" tests framed before specific
> jurisdiction evolved in the United States.  Nothing in
> International Shoe and its progeny suggests that "a
> particular quantum of local activity" should give a
> State authority over a "far larger quantum of . . .
> activity" having no connection to any in-state
> activity.

Daimler, 134 S. Ct. at 762 n.20 (quoting Feder, Goodyear,

"Home," and the Uncertain Future of Doing Business Jurisdiction,

63 S.C. L.Rev. 671, 694 (2012)).  The respondents in Daimler

---

[3] In a footnote in Daimler, the Court stated that the "multipronged
reasonableness check . . . articulated in Asahi [Metal Industry Co., Ltd. v.
Superior Court,] 480 U.S. [102] 113-14, 107 S. Ct. 1026 [(1987)] . . . . was
to be essayed when specific jurisdiction is at issue."  Daimler, 134 S. Ct.
at 762 n.20 (emphasis in original).  "When a corporation is genuinely at home
in the forum State . . . any second-step [reasonableness] inquiry would be
superfluous."  Id.  In light of this pronouncement, and the fact that the
court's decision in this case considers only general personal jurisdiction,
the court does not address the reasonableness arguments raised by the parties
in their papers.

argued that the petitioner's contacts with California were
systematic, continuous, and substantial enough to subject it to
general personal jurisdiction there, even though it was not
incorporated in California and its principal place of business
was not located there.  In discussing this argument, the Court
highlighted several relevant facts pertaining to the
petitioner's California-based contacts, including: (i) the
petitioner "has multiple California-based facilities, including
a regional office in Costa Mesa, a Vehicle Preparation Center in
Carson, and a Classic Center in Irvine"; (ii) the petitioner "is
the largest supplier of luxury vehicles to the California
market"; and (iii) the petitioner's "California sales account
for 2.4% of [the petitioner's] worldwide sales."[4] Daimler, 134
S. Ct. at 752.  However, even taking into account these
seemingly substantial contacts with California, the Court
concluded that there was "no basis to subject Daimler to general
jurisdiction in California." Id. at 760.  The Court warned that

> [i]f Daimler's California activities sufficed to allow
> adjudication of this Argentina-rooted case in
> California, the same global reach would presumably be
> available in every other State in which [the
> petitioner's] sales are sizable.  Such exorbitant
> exercises of all-purpose jurisdiction would scarcely
> permit out-of-state defendants "to structure their
> primary conduct with some minimum assurance as to

---

[4] These facts apply specifically to Mercedes-Benz USA, LLC ("MBUSA"), a non-
party subsidiary of the actual petitioner in Daimler, DaimlerChrysler
Aktiengesellschaft ("Daimler").  However, for purposes of its discussion on
general jurisdiction, the Court "assume[d] MBUSA's contacts [we]re imputable
to Daimler . . . ." Daimler, 134 S. Ct. at 760.

where that conduct will and will not render them
liable to suit."

Id. at 761-62 (quoting Burger King Corp. v. Rudzewicz, 471 U.S.
462, 472 (1985)).

Lockheed's contacts with Connecticut are even less
substantial than Daimler's were with California.  As the
plaintiff describes those contacts, "Lockheed Martin currently
has 28 employees working in four separate cities, it leases
property in New London with its name on the building and a
telephone listing, it has derived about $160 million in revenue
from Connecticut since 2008, and it pays corporate income tax in
Connecticut."  (Pl.'s Mem. Opp. Mot. Dismiss (Doc. No. 203)
("Pl.'s Mem."), at 2.).  As described above, however, these
contacts represent only a small portion of Lockheed's overall
business in the United States.  The figures cited by the
plaintiff represent "less than five one-hundredths of one
percent of Lockheed Martin's employees" nationwide, and "less
than five one-hundredths of one percent to just over one tenth
of one percent of Lockheed Martin's total revenue" for any
particular year.  (Def.'s Mem. at 5).  Furthermore, while
Lockheed does lease and operate out of one 9,000 square foot
space in Connecticut, and has leased other properties in the
past, it owns no real property in the state.  Finally, although
Lockheed may have "relationships with Connecticut business" and

"pay[] state income taxes and carry[] workers' compensation insurance," (Pl.'s Mem. At 15), its operations and services are directed primarily toward the United States government, not Connecticut businesses and residents.

In every respect, these contacts are less extensive and substantial than those found by the Supreme Court to be insufficient to establish general personal jurisdiction in Daimler. For instance, rather than having multiple in-forum facilities operating at the same time, like the petitioner in Daimler, the plaintiff has averred that Lockheed has leased at most four pieces of property in Connecticut, and currently only leases one; additionally, that one facility is operated only for the benefit of the United States government, unlike the facilities in Daimler which provided services to California residents. Indeed, the plaintiff has not shown that Lockheed provides any services specifically to Connecticut residents at all, unlike Daimler which was the largest supplier of the goods it offered, i.e. luxury cars, in the forum state. Finally, Lockheed's Connecticut-based revenue accounted for, at most, 0.1% of its national revenue, a much smaller percentage than the 2.4% of worldwide sales in Daimler. If Daimler cannot fairly be said to be "at home" in California, Lockheed is definitively not "at home" in Connecticut.

The plaintiff's attempts to distinguish the instant case from <u>Daimler</u> are unpersuasive.  The court disagrees with the plaintiff's assertion that "[t]he decision [in <u>Daimler</u>] ultimately turned on the fact that the plaintiffs were trying to sue a foreign parent corporation in a United States court, when the persons and events involved were entirely outside the United States", and also with her assertion that <u>Daimler</u> does not control here because "the case before this [c]ourt does not involve a parent corporation or a non-U.S. corporation or events occurring outside the country."  (Pl.'s Resp. Def.'s Notice of Supplemental Authority (Doc. No. 220) ("Pl.'s Resp."), at 2-3.)  On the contrary, in its primary discussion regarding why California could not assert general jurisdiction over Daimler (Part IV.B of <u>Daimler</u>), the Court never uses the words "parent" or "subsidiary", and uses "foreign" only to refer to a corporation not being domiciled in the forum state (as opposed to not being domiciled in the United States in general).  The parent-subsidiary relationship <u>is</u> discussed in detail in Part IV.A of <u>Daimler</u>, but this discussion relates only to the narrower question of the impact of the agency relationship on general jurisdiction and "whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary."  <u>Daimler</u>, 134 S. Ct. at 759.  As discussed above, for the purposes of its holding

-20-

regarding California's ability to assert general jurisdiction over Daimler, the Court assumed the subsidiary's contacts could be imputed to the parent, and thus this discussion is not relevant to the holding as to general jurisdiction. Furthermore, while the Court does discuss in the final section of the opinion (Part IV.C) the international aspect of Daimler and how it suggests that asserting general jurisdiction would not be appropriate, the Court specifically notes that these "[c]onsiderations of international rapport thus reinforce our determination that subjecting Daimler to general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands." Id. at 763 (emphasis added). Thus, rather than turning on the international nature of the parties and the claims, Daimler makes clear that the holding would be the same even if all aspects of the case were entirely domestic. Indeed, Justice Sotomayor says as much in her concurrence:

> [T]he principle announced by the majority would apply equally to preclude general jurisdiction over a U.S. company that is incorporated and has its principal place of business in another U.S. State. Under the majority's rule, for example, a General Motors autoworker who retires to Florida would be unable to sue GM in that State for disabilities that develop from the retiree's labor at a Michigan parts plant, even though GM undertakes considerable business operations in Florida.

Id. at 773 n.12 (Sotomayor, J., concurring).

Finally, the court finds unpersuasive the plaintiff's argument that "[i]f anything, [Daimler] supports the exercise of jurisdiction in this [c]ourt because all parties and the Court assumed that MBUSA's contacts with California, which are similar to Lockheed Martin's contacts with Connecticut, rendered the company essentially at home and subject to the jurisdiction of California courts." (Pl.'s Resp. at 3.) But the Court made clear that it assumed MBUSA was "at home" in California "for purposes of this decision only", and Daimler argued to the Court that in light of its decision in Goodyear, which was delivered after the parties submitted their briefs to the court of appeals in Daimler, MBUSA may no longer be considered amenable to general jurisdiction in California. Therefore, even assuming arguendo that Lockheed's position with respect to Connecticut is analogous to MBUSA's position, as opposed to Daimler's position, with respect to California, Daimler still does not support the exercise of general jurisdiction over Lockheed.

Therefore, even assuming the facts that the plaintiff has alluded to in her memoranda are true, and ignoring any facts provided by Lockheed that may conflict with the plaintiff's statement of facts, the plaintiff has failed to make a prima facie showing that this court can exercise personal jurisdiction over Lockheed.

**IV. CONCLUSION**

For the reasons set forth above, Lockheed's Motion to Dismiss (Doc. No. 198) is hereby GRANTED.

It is so ordered.

Dated this 14th day of May, 2014, at Hartford, Connecticut.

_____/s/_____
Alvin W. Thompson
United States District Judge
